**In the Matter of R. Z. F., alleged Dependent and Neglected Child.**

**No. 12644.**

Supreme Court of South Dakota.

Nov. 7, 1979.

Janice C. Godtland, Asst. Atty. Gen., Pierre, for respondent, State of S. D.; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.

Randolph F. Stiles of Hanson, Kaye, Stiles & Anderson, Mitchell, for appellant mother.

FOSHEIM, Justice.

This is an appeal from an adjudication of dependency and neglect and a disposition terminating appellant-mother's parental rights. We affirm.

According to the evidence, appellant was admitted to Methodist Hospital in Mitchell on July 28, 1978, and gave birth to R.Z.F. At the time of her admission, she had an odor of paint about her and had difficulty communicating. During the course of appellant's hospitalization, her nurses noticed a distinct lack of maternal bond between mother and child. Appellant did not take adequate time to feed her baby, nor did she display interest in postnatal care instruction provided by hospital personnel.

Appellant was released on July 31, but her child remained hospitalized due to abnormal "twitching" movements and excessive irritability. It appears that appellant made no attempt to visit the child or to inquire regarding its condition during the two-day interval between her release and that of her baby.

R.Z.F. was released to appellant on August 2 after considerable improvement in his condition. Appellant's social worker testified that during a visit to appellant's apartment while the mother had custody of R.Z.F., appellant was "shaky", her eyes were glassy, and the apartment smelled of paint. On August 6, appellant brought her child back to the hospital, complaining that he was not eating properly and had turned blue on two occasions. The admitting physician noted that the child appeared bruised and malnourished; his diagnosis was dehy-

dration and possible child neglect. R.Z.F. received routine newborn care and exhibited marked improvement. As a result, he was discharged on August 14 to the custody of a foster parent pursuant to an August 10 court order granting temporary custody to the Department of Social Services. Two days later, however, he was re-admitted due to increased irritability and twitching. Upon his third admission, it was discovered that R.Z.F. suffered from a calcium deficiency and he was transferred to a Sioux Falls hospital for treatment. After his release to the custody of foster parents, R.Z.F. continued to experience some problems, but none that required hospitalization.

Adjudicatory and dispositional hearings were held in October of 1978, where R.Z.F. was found to be dependent and neglected and appellant's parental rights were terminated. It was established that appellant had been admitted to Yankton State Hospital on ten occasions between 1971 and 1976 for treatment of problems primarily related to paint-sniffing. Between 1976 and 1978, she was in detoxification or in referral at the Alcohol/Drug Center in Mitchell approximately one hundred times, again largely as a result of paint-sniffing. She was in the detoxification unit at Mitchell as recently as two weeks prior to the hearings here in question. At the dispositional hearing, the court also took judicial notice of a case file relating to hearings in 1975 where another of appellant's children was adjudicated dependent and neglected, resulting in the termination of appellant's parental rights in that child. The disposition in that case was based in large part upon a finding that appellant engaged in habitual paint-sniffing.

■ Appellant contends that the trial court was barred by the doctrines of res judicata and collateral estoppel from considering the 1975 case file in arriving at its disposition in the present case. Reliance on these doctrines, however, is misplaced. The instant case does not involve the child that was the subject of the 1975 case, but is concerned instead with a different child and a separate set of facts. *Carr v. Preslar,* 73 S.D. 610, 47 N.W.2d 497 (1951). Neither does this case seek to relitigate a point which was actually and directly in issue and passed upon in the 1975 case. Appellant cites *Matter of N. J. W.,* 273 N.W.2d 134 (S.D.1978), in support of her contention that res judicata and collateral estoppel apply in this case. *N.J.W.,* however, is inapposite here. The children in *N.J.W.* were found not to be dependent and neglected at a 1974 adjudicatory hearing. Subsequently, another adjudication was sought. At the adjudicatory hearing in the second action, the trial court admitted evidence and testimony pertaining to periods of time prior to the 1974 adjudication where the children had been found not dependent and neglected. The state there, in effect, attacked the earlier adjudication and, through the introduction of evidence which was not introduced at the earlier adjudication, attempted to relitigate issues which had already been decided by a court of competent jurisdiction. In the case at bar, the state neither challenges the 1975 adjudication and disposition involving appellant's other child, nor attempts to relitigate any issues there decided. On the contrary, the state relies upon the findings in the 1975 case in support of its position in the present case.

■ Appellant also contends that the 1975 case file was too remote to be of any value and bore no relevance to the present case. Where there has been a determination of dependency and neglect with regard to one child, however, such a determination is relevant and it is within the discretion of the trial court "to determine the likelihood of abuse of other children in the same family." *In re K. D. E.,* 87 S.D. 501, 506, 210 N.W.2d 907, 910 (1973). This is particularly true where, as here, the dependency and neglect of a child is related to the same type of parental behavior which resulted in the dependency and neglect of an earlier child of the same parent. Nor do we believe that the 1975 case was too remote in time to be of probative value, especially where there was recent evidence of parental behavior or character traits which existed at the time of the earlier hearing. *Rob-*

*inson v. People in Interest of Zollinger*, 173 Colo. 113, 476 P.2d 262 (1970).

■ Appellant next contends that there was insufficient evidence to support the trial court's finding of dependency and neglect. SDCL 26–8–22.5 * requires that the state prove the allegations set forth in its petition by a preponderance of the evidence. While there is some question concerning the cause of R.Z.F.'s health problems following birth, the trial court's findings, considered as a whole, are not clearly erroneous. *In the Interest of D. K.*, 245 N.W.2d 644 (S.D. 1976). The record is replete with evidence of parental misconduct and conditions which establish that this child's environment was injurious to his well-being and that proper parental care was not provided. Accordingly, we cannot conclude that the trial court erred in its finding of dependency and neglect.

Finally, appellant contends that termination of her parental rights was not the least restrictive alternative available to the court, in part because she did not receive certain services that were available through the Department of Social Services. It is sufficient to note, however, that appellant received ample aid through the Department. Appellant complains that she did not receive homemaker assistance or a furniture allowance. The record, however, indicates that no such aid was necessary. In addition, appellant's social worker helped her apply for and receive Aid to Dependent Children. The social worker provided transportation for appellant's doctor appointments and took her to and from the hospital. While appellant had custody of R.Z.F., the social worker obtained food and delivered it to appellant's apartment. The social worker also attempted to help appellant to adjust socially, urging her to seek treatment for her paint-sniffing problem.

■ Appellant also argues that the right of dependent and neglected children to protective and supportive services translates into a coextensive right of treatment and support for parents of such children. While we recognize that the fundamental nature of parents' rights to their children mandates at least a reasonable effort to aid such parents, we must bear in mind that the best interests of the child always prevail. *Matter of N. J. W.*, supra; *People in Interest of D. K.*, supra. In the present case, it is clear that appellant has a long and uninterrupted history of chemical dependency which has rendered her unfit to fulfill her role as a parent. In January of 1978, in view of appellant's pregnancy, she was urged by her social worker to seek treatment at Yankton for her paint-sniffing problem, but she refused. Similarly, the counselor at the Alcohol/Drug Center testified that appellant's attitude toward treatment was negative and that she was not cooperative with efforts to help her. In addition, it appears that her paint-sniffing continued throughout the term of her pregnancy and up until the time of the hearings here in question. We have recently held that termination of parental rights is justified in situations where attempts to assist a parent in providing better care for a child are unsuccessful. *Matter of C. E. and D. E.*, 283 N.W.2d 554 (S.D.1979); *Matter of N. J. W.*, supra. Accordingly, the trial court did not err in terminating appellant's parental rights.

We have reviewed appellant's remaining assignments of error and find them to be without merit. The orders appealed from are affirmed.

All the Justices concur.

---

* SDCL 26–8–22.5 provides:

    At the adjudicatory hearing, which shall be conducted as provided by §§ 26–8–22 and 26–8–22.4, inclusive, the court shall first consider only whether the allegations of the peti-tion are supported by evidence beyond a reasonable doubt in cases concerning delinquent children or children in need of supervision, or by a preponderance of the evidence in cases concerning neglected or dependent children.